1   **WO**

2

3

4

5

6            **IN THE UNITED STATES DISTRICT COURT**

7               **FOR THE DISTRICT OF ARIZONA**

8

9   Ruby Marion Mitchell,                No. CV-13-02384-PHX-JZB

10                  Plaintiff,            **ORDER**

11   v.

12   Carolyn W. Colvin,

13                  Defendant.

14

15       Plaintiff Ruby Marion Mitchell seeks review of the Social Security Administration

16   Commissioner's decision denying her application for supplemental security income

17   benefits under the Social Security Act.  (Doc. 1; Doc. 18.)  For the reasons below, the

18   Court will affirm the Commissioner's decision.

19   **I.    Background**

20       On March 16, 2009, Plaintiff filed applications for disability insurance and

21   supplemental security income benefits.  (AR[1] 78.)  Plaintiff alleged that she became

22   unable to work on July 15, 2007.  (*Id.*)  Plaintiff's applications were initially denied on

23   August 26, 2009, and denied upon reconsideration on December 22, 2009.  (*Id.*)  In a

24   decision dated May 27, 2011, an ALJ found Plaintiff is not entitled to disability insurance

25

26

27

28   _____

[1] Citations to "AR" are to the administrative record.

1    or supplemental social security benefits.[2]  (*Id.* at 78-88.)   Plaintiff did not appeal the May

2    2011 ALJ decision, and it became final and binding.  (*Id.* at 11-12.)

3          On July 7, 2011, Plaintiff filed an application for supplemental security income

4    benefits, alleging an onset date of May 28, 2011, due to a variety of conditions, including

5    bipolar disorder, chronic obstructive pulmonary disease, ADHD, and status post

6    pacemaker placement secondary to syncope.  (*Id.* at 14, 207-14.)  On January 18, 2012,

7    the Social Security Administration denied Plaintiff's application.  (*Id.* at 11.)  On August

8    15,   2012,   the   Social   Security   Administration   denied   Plaintiff's   request   for

9    reconsideration.  (*Id.*)

10         Pursuant to Plaintiff's request, a hearing was held on April 15, 2013, before ALJ

11   Patricia A. Bucci.  (*Id.* at 11-30.)  In a decision dated May 31, 2013, the ALJ ruled

12   Plaintiff is not entitled to disability benefits because she is "not disabled under section

13   1614(a)(3)(A) of the Social Security Act."[3]  (*Id.* at 30.)  The Appeals Council denied

14   Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final

15   decision of the Commissioner of the Social Security Administration.  (*Id.* at 1-6.)

16         Having exhausted the administrative review process, on November 20, 2013,

17   Plaintiff sought judicial review of the ALJ's decision by filing a Complaint in this Court

18   pursuant to 42 U.S.C. § 405(g).  (Doc. 1.)  On August 4, 2014, Plaintiff filed an Opening

19   Brief, seeking remand of this case to the Social Security Administration for an award of

20   _____

21   [2] The ALJ found that Plaintiff suffered from the following severe impairments: bipolar
     disorder, attention deficient hyperactivity disorder ("ADHD"), and alcohol dependence,
22   in remission.  (*Id.* at 80.)  However, the ALJ found Plaintiff capable of performing a full
     range of work with certain non-exertional limitations.  (*Id.* at 83.)  The ALJ further found
23   that jobs exist in significant numbers in the national economy that Plaintiff can perform.
     (*Id.* at 87.)
24

25   [3] In her decision, the ALJ found that Plaintiff rebutted the presumption of continuing
     non-disability after the previous unfavorable ALJ decision because Plaintiff "alleged a
26   new physical impairment of heart problems[,] the evidence confirmed placement of a
     pacemaker, and "there is new and material evidence related to [Plaintiff's] physical
27   impairment." (*Id.* at 12.)  Therefore, the ALJ made new findings based on all of the
     pertinent evidence.  (*Id.*); *see also Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988)
28   ("The claimant, in order to overcome the presumption of continuing non-disability arising
     from the first administrative law judge's findings of non-disability, must prove 'changed
     circumstances' indicating a greater disability.").

benefits.  (Doc. 18.)  On August 14, 2014, Defendant filed a Response Brief in support of the Commissioner's decision.  (Doc. 19.)  On September 4, 2014, Plaintiff filed a Reply Brief.  (Doc. 24.)  On February 13, 2015, Defendant filed a Notice of Supplemental Authority, arguing that the Ninth Circuit Court's decision in *Treichler v. Comm'r of SSA*, 775 F.3d 1090 (9th Cir. 2014), requires the Court to remand for further proceedings, instead of for an award of benefits, should the Court find reversible error.  (Doc. 26.)

## II.   Legal Standards

### a.  Standard of Review

The Social Security Act, 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's disability benefits determinations.  The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *see also Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions.  *Reddick*, 157 F.3d at 720; *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."  *Andrews*, 53 F.3d at 1039. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn*, 495 F.3d at 630 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).  The Court reviews only those issues raised by the party

challenging the ALJ's decision.   *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).   Similarly, the Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

### b.  The ALJ's Five-Step Evaluation Process

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  A person is under a disability only:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step evaluation process to determine whether an applicant is disabled under the Social Security Act:

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry.  *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity" in determining whether the claimant can still do past relevant work or make an adjustment to other work.  *See id.* § 416.920(a)(4)(iv)-(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013).  "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Applying the five-step evaluation process, the ALJ found that Plaintiff is not disabled and is not entitled to benefits. (*Id.* at 14-30.) At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the application date. (*Id.* at 14.) At step two, the ALJ found that Plaintiff has the following severe impairments: bipolar disorder, chronic obstructive pulmonary disease, ADHD, and status post pacemaker placement secondary to syncope. (*Id.* at 14.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. (*Id.* at 16-18.)

At step four, the ALJ found the following:

> [Plaintiff] had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] should never climb ladders, ropes, or scaffolds and can frequently climb ramps or stairs, balance, stoop, crouch kneel, and crawl. [Plaintiff] should avoid concentrated exposure to non-weather related temperatures of extreme heat and extreme cold; and should avoid concentrated exposure to pulmonary irritants, such as fumes, odors, dusts, or gases, and poorly ventilated areas. [Plaintiff] should avoid concentrated exposure to dangerous machinery with moving, mechanical parts, except motor vehicles, and should avoid concentrated exposure to unprotected heights. [Plaintiff] is limited [to work] that is simple, routine and repetitive, with only occasional simple decision making required and only occasional changes in the work setting. [Plaintiff] is further limited to only occasional interaction with the public, co-workers, and supervisors, but can still be in the vicinity of others.

(*Id.* at 16.) The ALJ further found that Plaintiff is unable to perform any of her past relevant work. (*Id.* at 28.) At step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 29.) Given that finding, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since . . . the date the application was filed." (*Id.* at 30.)

## III.   Analysis

Plaintiff argues that the ALJ's decision is defective for four reasons: (1) the ALJ erred in weighing medical source evidence; (2) the ALJ improperly evaluated Plaintiff's credibility and discounted her testimony; (3) the ALJ improperly evaluated third-party

testimony by Plaintiff's son; and (4) the ALJ's hypothetical to the vocational expert was incomplete.  The Court addresses each argument below.

### a. Weighing of Medical Source Evidence

Plaintiff argues that the ALJ erred in weighing the opinions of the following physicians:  (1) Dr. Ahmed Qasimyar, treating physician; (2) Dr. Houshang Semino, treating physician; and (3) Dr. Sharon Steingard, examining physician.  Below, the Court addresses the ALJ's treatment of these opinions.

### i. Legal Standard

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians.  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician.  *See Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R. § 404.1527(c)(2)-(6).  If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  *Garrison*, 759 F.3d at 1012 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).  But "[t]he ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Embrey*, 849 F.2d at 421-22.  "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining *or* a treating physician." *Lester*, 81 F.3d at 831 (emphasis in original).

1

**ii. The ALJ did not err in rejecting the opinions of treating physician, Dr. Qasimyar.**

2

Plaintiff argues that the ALJ erred in giving little weight to the opinions of

3

Plaintiff's treating physician, Dr. Qasimyar.  (Doc. 18 at 17-19.)  Dr. Qasimyar began

4

treating Plaintiff in January 2010 for several conditions, including asthma, chest

5

tightness, ear ache, neck pain, headaches, and bipolar disorder.  (AR 932-37.)  During the

6

period of January 2010 through February 2013, Plaintiff saw Dr. Qasimyar for evaluation

7

of several symptoms, including respiratory complaints, back pain, headaches, and for

8

follow-up on her pacemaker, which was implanted in July 2011.  (*Id.* at 780-83, 787-93,

9

804-06, 814-17, 1433-49.)

10

On April 1, 2013, Dr. Qasimyar completed a Medical Assessment of Ability to Do

11

Work-Related Physical Activities form.  (*Id.* at 1385-86.)  Dr. Qasimyar opined that: (1)

12

Plaintiff cannot perform work eight hours a day, five days a week on a regular and

13

consistent basis; (2) Plaintiff can sit for between three and four hours in an eight-hour

14

work day; (3) Plaintiff can stand/walk for less than two hours in an eight-hour work day;

15

(4) Plaintiff can lift and carry between 10 and 15 pounds; (5) Plaintiff must alternate

16

between sitting, standing, or walking every 21-45 minutes and rest for 15 minutes or

17

more with each position change; (6) Plaintiff has moderate limitations[4] of pain, fatigue,

18

dizziness, and headaches; and (7) Plaintiff would miss two to three days from work each

19

month.  (*Id.*)

20

Dr. Qasimyar's opinions were contradicted by the opinions of agency, non-

21

examining physicians, Dr. Ernest Griffith and Dr. Erika Wavak, and examining physician

22

Dr. Monte L. Jones.  (*Id.* at 112-14, 136-38, 756-61.)  The ALJ could, therefore, discount

23

Dr. Qasimyar's opinions for specific and legitimate reasons supported by substantial

24

evidence.  *Lester*, 81 F.3d at 830-31.

25

The Court finds that the ALJ gave specific and legitimate reasons supported by

26

substantial evidence for rejecting Dr. Qasimyar's opinions.  First, the ALJ asserted that

27

_____

28

[4] The form used by Dr. Qasimyar defines "moderate" as "Off task 11-15% of an 8-hour work day."  (*Id.* at 1386.)

Dr. Qasimyar's findings seemed "extreme," based on Plaintiff's complaints, and not supported by or consistent with Dr. Qasimyar's treatment notes and other medical evidence in the record.  (AR 26.)  Specifically, the ALJ noted that Dr. Qasimyar's treatments notes generally indicate "unremarkable physical findings of lungs clear, regular heart rate and rhythm, no neurological deficits, normal gait and station, appropriate affect and demeanor, normal range of motion, strength, and tone, and negative for fatigue, chest pain, cough, dyspnea, back pain, and myalgias."  (*Id.*)  The ALJ further stated that treatment notes indicate Plaintiff tolerated her medications well without side effects.  (*Id.*)

Several of Dr. Qasimyar's treatment notes reflect objective normal results or mild symptoms.  (*See, e.g.*, *Id.* at 778, 788, 791, 798-99, 801-02, 805-06, 815-16, 819, 825, 1439, 1444, 1448, 1452, 1456.)  Plaintiff asserts generally that "Dr. Qasimyar's treatment records are voluminous, supporting the written opinion."  (Doc. 18 at 18.)  However, Plaintiff cherry-picks noted abnormalities from the treatment notes, many identified based on Plaintiff's subjective complaints, and ignores the overall objective findings stated throughout the notes.  Incongruity between a doctor's medical opinion and treatment notes is a specific and legitimate reason to discount that doctor's opinion. *Tommassetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Further, on the whole, only the "subjective" portions of Dr. Qasimyar's treatment notes support his opinions regarding Plaintiff's limitations.   (*See, e.g.*, *Id.* at 800-02.)   The ALJ did not err in rejecting Dr. Qasimyar's opinions for this reason.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (finding that substantial evidence supports the ALJ's decision not to rely on a physician's opinion that is based on the plaintiff's complaints and information provided by the plaintiff's family).

Likewise, the ALJ cited other medical evidence in the record regarding Plaintiff's physical limitations that is inconsistent with Dr. Qasimyar's assessment of Plaintiff's limitations, including treatment notes from late 2011 and 2012 that show no significant abnormalities.   (*Id.* at 21-22); *see Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1195

(9th Cir. 2004) (an ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole or by objective medical findings).

Second, the ALJ found that Dr. Qasimyar's assessment is contradicted by the opinions of examining physician Dr. Jones and state agency, non-examining physicians Dr. Wavak and Dr. Griffith, whose opinions the ALJ found were supported by clinical/lab findings, and to which the ALJ gave greater weight. (*Id.* at 26.)

On December 29, 2011, Dr. Jones examined Plaintiff. Dr. Jones observed that Plaintiff had a range of motion for her cervical spine, thoracic spine, lumbar spine, left and right shoulder, elbow, wrists and pelvis within acceptable limits. (*Id.* at 758.) Further, he noted that Plaintiff "was able to grasp items without human assistance. No contractures are evident. The joints show no signs of crepitus, erythema, or acute swelling. There is no muscle atrophy." (*Id.*) Plaintiff's gait and posture were normal. (*Id.* at 757.) Plaintiff "was able to get up from an armless chair without difficulty." (*Id.*) Further, during the exam, Plaintiff stated that although she has syncopal episodes, they have markedly decreased since her pacemaker placement. (*Id.* at 756.) Finally, Plaintiff's heart was "[n]ormal S1, S2 with a regular rate and rhythm and no murmur. Chest-Lungs: The chest was symmetrical with normal excursions . . . . Abdomen: Normal. Extremities: trace swelling to bilateral hands, trace edema bilateral lower extremity." (*Id.*)

Based on his examination, on January 8, 2012, Dr. Jones completed a Medical Source Statement of Ability to Do Work-related Activities (Physical) form, in which he opined that Plaintiff does not have any limitations in sitting, seeing, hearing, speaking, reaching, handling, fingering, or feeling. (*Id.* at 759-62.) Dr. Jones further noted on the form that Plaintiff should never climb ladders, ropes, or scaffolds, and is restricted in working around heights, moving around machinery, and working around extremes in temperature. (*Id.* at 761.) Dr. Jones also opined that Plaintiff can stand and/or walk six to eight hours in an eight-hour day. (*Id.* at 760.) The ALJ gave significant weight to Dr. Jones' opinions. (*Id.* at 25-26.)

On January 12, 2012, state agency physician Dr. Wavak completed a Physical Residual Functional Capacity Assessment based upon her review of the record.   (*Id.* at 112-14.)  Dr. Wavak opined that Plaintiff can stand, sit and/or walk with normal breaks for about six hours in an eight-hour workday.  (*Id.* at 112.)  Dr. Wavak further stated that Plaintiff should never climb ladders, ropes, or scaffolds and should avoid concentrated exposure to extreme cold, heat, and hazards.  (*Id.* at 113.)  Dr. Wavak noted that Plaintiff does not have manipulative, visual, or communicative limitations.  (*Id.* at 113.)  Dr. Wavak opined that Plaintiff can frequently lift and/or carry ten pounds, and occasionally lift and/or carry 20 pounds.  Finally, Dr. Wavak opined that Plaintiff can frequently balance, stoop, kneel, crouch, and crawl.  (*Id.* at 113.)

On August 14, 2012, state agency physician Dr. Griffith completed a Physical Residual Functional Capacity Assessment based on his review of medical records.  (*Id.* at 136-38.)  Dr. Griffith's assessment echoed the limitations identified by Dr. Wavak.  (*Id.*)  Dr. Griffith further noted that "there is no evidence of worsening.  3/12 hospitalization for atypical chest pain.  No evidence of cardiac changes.  This RFC is affirmed."  (*Id.*)

Both Dr. Wavak's and Dr. Griffith's assessments cite to other medical evidence in the record.  For example, both assessments noted that Plaintiff "reported previous fatigue and syncopal episodes have significantly improved since pacemaker placement."  (*Id.* at 114, 137.)  Both assessments also noted that Plaintiff was "admitted [on] 8/11 stating she had syncopal episode.  Pacemaker was found to be working normally with no arrhythmia.  Neurological workup was also negative."  (*Id.* at 114, 137.)  They also noted that Plaintiff was "referred to neurology but no/fu.  Neurologic exam was intact.  No aggressive workup or treatment planned per record."  (*Id.* at 114, 137.)  Finally, both assessments cited to Dr. Jones' findings that Plaintiff's gait and "motor" were normal.  (*Id.*)

Plaintiff argues that the ALJ erred in relying on the opinions of Dr. Jones, Dr. Wavak, and Dr. Griffith, instead of Dr. Qasimyar's opinions, because those three physicians fail to identify what records they reviewed.  (Doc. 18 at 19, n.8.)  Plaintiff likewise asserts that Dr. Griffith did not explain his conclusions; rather, he "simply writes

1   RFC affirmed."   (Doc. 18 at 4.)   However, as stated above, Dr. Wavak's and Dr.

2   Griffith's assessments each cite to medical evidence in the record.

3        Further, Dr. Jones provided a report detailing his examination findings, which are

4   consistent with the ALJ's findings regarding Plaintiff's limitations, regardless of what

5   records Dr. Jones reviewed.  Therefore, Dr. Jones' findings, upon which Dr. Griffith and

6   Dr. Wavak relied in part, are a sufficient basis upon which to reject Dr. Qasimyar's

7   opinions.  *Batson*, 359 F.3d at 1195 (upholding ALJ's rejection of two treating physician

8   opinions, in part because of their conflict with a consultative medical evaluation);

9   *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (examining and reviewing source

10  opinions constitute substantial evidence where consistent with independent clinical

11  findings or other record evidence).[5]

12       Finally, the ALJ found that Dr. Qasimyar's opinion regarding Plaintiff's need to

13  sit and stand "at will" was not supported or explained.  (AR 26.)  The ALJ correctly

14  noted that neither Dr. Qasimyar's opinion, nor his treating notes, explains this limitation.

15  An ALJ may "permissibly reject[ ] . . . check-off reports that [do] not contain any

16  explanation of the bases of their conclusions."  *Crane v. Shalala*, 76 F.3d 251, 253 (9th

17  Cir. 1996); *Batson*, 359 F.3d at 1195 (an ALJ may discredit treating physicians' opinions

18  that are conclusory, brief, and unsupported by the record as a whole, or by objective

19  medical findings).

20       Accordingly, the Court finds that the ALJ provided specific and legitimate reasons

21  supported by substantial evidence for rejecting Dr. Qasimyar's opinions.

---

[5] Although not entirely clear, Plaintiff appears to argue in a footnote that the ALJ erred in denying Plaintiff's request to subpoena Dr. Jones and Dr. Griffith to testify at the administrative hearing.  (Doc. 18 at 19 n.8.; Doc. 24 at 9 n.6.)  An ALJ's decision to issue a subpoena for the development of the record is discretionary.  *See* 20 C.F.R. § 404.950(d) ("When it is reasonably necessary for the full presentation of a case, an administrative law judge . . . may . . . issue subpoenas.").  Here, the ALJ had hundreds of pages of medical records, evidence of Plaintiff's daily activities, and Dr. Jones' own physical examination findings, upon which Dr. Griffith relied in part.  Accordingly, the ALJ's failure to subpoena Dr. Jones and Dr. Griffith is not legal error.

### iii. The ALJ did not err in rejecting the opinions of treating physician, Dr. Semino.

Plaintiff also argues that the ALJ erred in rejecting the opinions of Dr. Semino. Plaintiff sought treatment from Dr. Semino for her bipolar disorder and ADHD from January 7, 2010 through May 1, 2012.  (AR 1000-01.)  On October 21, 2011, Dr. Semino completed a Medical Assessment of Claimant's Ability to Perform Work Related Activities (Mental) form and opined that Plaintiff had "moderately severe"[6] limitations in her degree of restriction of daily activities, deterioration in personal habits, and ability to understand, carry out, and remember instructions on a sustained basis in a routine work setting.  (AR 746.)  Dr. Semino further opined that Plaintiff had "moderate" limitations in her ability to relate to other people, degree of constriction of interests, and ability to respond appropriately to supervision, perform repetitive tasks, and perform varied tasks on a sustained basis in a routine work setting.  (*Id.* at 746-47.)  Finally, Dr. Semino opined that Plaintiff had "mild" limitations in her ability to perform simple tasks.  (*Id.* at 746.)

Dr. Semino's opinions are contradicted by the opinions of state agency psychologists Dr. Elliot Salk and Dr. Rosalia Pereyra.  Therefore, the ALJ could reject Dr. Semino's opinions for specific and legitimate reasons supported by substantial evidence.  *Lester*, 81 F.3d at 830-31.

The Court finds that the ALJ gave specific and legitimate reasons supported by substantial evidence for rejecting Dr. Semino's opinions.  First, the ALJ asserted that Dr. Semino's opinions are not supported by his treatment notes or other evidence in the record.  (AR 27.)   Several of Dr. Semino's treatment notes state "n/a" under the "objective" heading, even though Plaintiff reports symptoms such as feeling "anxious" as her "subjective" symptoms.  (*See, e.g.*, *Id.* at 1018-19, 1025-26, 1034, 1039-40.)   In

---

[6] The form Dr. Semino used includes the following definitions: (1) "Moderately Severe" is defined as "an impairment which seriously affects ability to function"; (2) "Moderate" is defined as "an impairment which affects but does not preclude ability to function"; and (3) "Mild" is defined as a "suspected impairment of slight importance which does not affect ability to function."  (*Id.* at 747.)

several notes, Dr. Semino also gave Plaintiff a GAF rating of 60.[7]  (*Id.*)

Plaintiff argues that Dr. Semino's opinions are supported by his treatment notes and the notes from "multiple physicians detailing [Plaintiff's] physical and psychiatric dysfunction," citing generally to the records from Southwest Behavior Health Services, Inc., found at AR 998-1186.  (Doc. 18 at 20.)  However, Plaintiff fails to cite to any specific treatment note that supports Dr. Semino's opinions regarding Plaintiff's limitations.  Further, several of the notes from Southwest Behavioral Health Services do not support the limitations provided by Dr. Semino.  For example, on June 23, 2011, Shylo Swanty, MC, LAC, BHP, noted that Plaintiff appeared "cheerful" during group therapy.  (*Id.* at 1015.)  Similarly, on August 8, 2011, Sara Listar-Guest, MC, LAMFT, BHP, noted that Plaintiff "is doing well and working at using her voice to advocate for herself."  (*Id.* at 1011.)[8]  The ALJ cited similar treatment notes in the record.  (*Id.* at 19-20.)  Accordingly, the ALJ did not error in finding that Dr. Semino's opinions were inconsistent with his treatment notes and other evidence in the record.  *See Tommassetti*, 533 F.3d at 1041.

---

[7] As the Ninth Circuit Court in *Garrison* explained: "'A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment.' *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). According to the DSM-IV, a GAF score between 41 and 50 describes 'serious symptoms' or 'any serious impairment in social, occupational, or school functioning.' A GAF score between 51 to 60 describes 'moderate symptoms' or ['any moderate difficulty in social, occupational, or school functioning.' Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement. We note, however, that GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects. *See, e.g., Titles II & XVI: Capability to Do Other Work-Themedical-Vocational Rules As A Framework for Evaluating Solely Nonexertional  Impairments*, SSR 85-15, 1985 SSR LEXIS 20, 1983-1991 Soc. Sec. Rep. Serv. 343 (S.S.A 1985) ('The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day.').'" *Garrison*, 759 F.3d at 1003 n.4.

[8] Notably, the records found at AR 1068 through AR 1186, to which Plaintiff cites, are treatment records and counseling notes from treatment prior to the alleged onset date of May 28, 2011.  Regardless, many of these notes are inconsistent with Dr. Semino's opinions regarding Plaintiff's limitations. For example, on April 20, 2011, Plaintiff had a "neutral" mood, normal speech, good insight, and good judgment. (AR 1068.) Further, Dr. Semino noted that Plaintiff had improved.  (*Id.* at 1068-69.)

1       Second, the ALJ gave little weight to Dr. Semino's opinions because he did not

2   conduct a psychological evaluation of Plaintiff.   (AR 27.)   The form Dr. Semino

3   completed explicitly states that he did not conduct a psychological evaluation because

4   such an evaluation was "not offered in" his clinic.   (*Id.* at 747.)   The ALJ did not err in

5   rejecting Semino's opinions for this reason.   *See Thomas*, 278 F.3d at 957 ("The ALJ

6   need not accept the opinion of any physician, including a treating physician, if that

7   opinion is brief, conclusory, and inadequately supported by clinical findings.").

8       Third, the ALJ asserted that Dr. Semino's assessment "does not provide any

9   specific work limitations, but is merely a check-box form without any supporting

10   documentation." (*Id.* at 27.)   Plaintiff argues that the ALJ erred in rejecting Dr. Semino's

11   opinions for this reason because although the "medical source statement itself is in a

12   checklist format, it is accompanied by Dr. Semino's records and the records of multiple

13   physicians detailing [Plaintiff's] physical and psychiatric dysfunction." (Doc. 18 at 20.)

14   As stated above, on the whole, and as discussed by the ALJ, Dr. Semino's objective

15   observations in his treatment notes are not consistent with his opinions regarding

16   Plaintiff's limitations.   (*See, e.g.*, AR 1034.)   Accordingly, the ALJ did not err in

17   rejecting Dr. Semino's opinions because those opinions were not explained or supported

18   by evidence in the record.   *See Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012)

19   (an ALJ may reject check-off reports that do not contain any explanation of the bases of

20   his or her conclusions); *Bayliss*, 427 F.3d at 1216 (discrepancy between doctor's opinion

21   and his notes and other observations is a clear and convincing reason to discount

22   opinion).

23       Fourth, the ALJ cited Dr. Semino's note on the form that his opinions regarding

24   Plaintiff's limitations are based on Plaintiff's reporting.   (AR 27.)   As stated above, Dr.

25   Semino's treatment notes document subjective symptoms by Plaintiff, but on the whole,

26   fail to provide objective findings that support his opinions regarding Plaintiff's

27   limitations.   (*See e.g.*, *Id.* at 1034.)   The ALJ may properly reject Dr. Semino's opinions

28   because they are based on Plaintiff's subjective complaints.   *See Bayliss*, 427 F.3d at

1217.

Fifth, the ALJ rejected Dr. Semino's opinions because they were contradicted by Dr. Steingard's, Dr. Salk's, and Dr. Pereyra's opinions.  (*Id.* at 27.)  Plaintiff argues that the ALJ "is incorrect in asserting Dr. Semino's opinion is inconsistent with that of" Dr. Steingard because Dr. Steingard opined Plaintiff's medical conditions "would result in significant moderately severe mental limitations inconsistent with the ability to sustain concentration for an 8-hour day."  (Doc. 18 at 21-22.)

Plaintiff overstates Dr. Steingard's opinions.  In December 2011, Dr. Steingard completed a psychological evaluation of Plaintiff.  (AR 749.)  Based on her evaluation, Dr. Steingard opined that Plaintiff "may" have problems with more complicated directions and could easily become frustrated, especially in changing environments or with changes in duties, but that Plaintiff could understand simple instructions and was cognitively capable of simple and repetitive tasks. (*Id.* at 754-55.)  Dr. Steingard also opined that Plaintiff would "likely" have concentration problems during an episode of elevated mood or increased depression, but observed that Plaintiff's concentration during the interview was adequate. (*Id.* at 754.)  Dr. Steingard opined that Plaintiff had mild limitations in social interaction (*Id.*)

Further, Dr. Steingard's observations during her physical exam of Plaintiff support the ALJ's assessed RFC.  For example, Dr. Steingard noted that Plaintiff's speech was unremarkable, associations were logical, stream of thought was unremarkable, insight and judgment appeared to be limited but intact, and she did not need any instructions repeated.  (*Id.* at 752.)  The ALJ found Dr. Steingard's examination findings probative and persuasive of Plaintiff's ability to complete at least simple work.  (*Id.* at 26.)

On January 5, 2012, state agency, non-examining psychologist Dr. Pereyra completed a Mental Residual Functional Capacity Assessment based on her review of the record.  (AR 114-16.)  She opined that Plaintiff could understand and remember simple one- and two-step instructions, perform simple tasks on a sustained basis, and follow a simple routine without special supervision.  (*Id.*)  Dr. Pereyra further opined that Plaintiff

will likely have difficulties with complex tasks, but has no significant limitations in her understanding, memory, concentration and persistence, or adaptation. (*Id.*)

Similarly, on August 14, 2012, state agency, non-examining psychologist Dr. Salk completed a Mental Residual Functional Capacity Assessment based on his review of the record. (*Id.* at 138-40.) Dr. Salk also opined that Plaintiff did not have significant limitations in concentration and persistence, understanding and memory, social interaction, or adaptation. The ALJ gave Dr. Salk's and Dr. Pereyra's opinions significant weight. (*Id.* at 27.)

Plaintiff asserts that the ALJ erred in relying on Dr. Pereyra's opinion because Dr. Pereyra states Dr. Steingard's opinions are consistent with the record and entitled to great weight, but the vocational expert testified Dr. Steingard's opinions would preclude sustained work. (Doc. 18 at 4.) Plaintiff misstates the vocational expert's testimony. The vocational expert testified that the "limitations" provided by Dr. Steingard's opinion were "very vague" and it was difficult to make an assessment "because it's not more functionally defined." (AR 69.) Plaintiff's counsel then included a restriction of being off-task 15 percent of the day, which is not a limitation identified by Dr. Steingard. Further, even if Plaintiff's assertions are true, they do not address the ALJ's treatment of Dr. Pereyra's opinions regarding Plaintiff's work-related limitations.

The only other argument Plaintiff makes regarding these non-examining opinions is that they were prepared "long before the hearing and without the benefit of post dated records." (Doc. 18 at 5.) However, Plaintiff fails to cite to any additional records that undermine the conclusions reached by Dr. Salk or Dr. Pereyra. Further, other medical evidence in the record supports Dr. Salk's and Dr. Pereyra's opinions. (*See, e.g.*, AR 756-61.) The ALJ therefore did not err in relying on those opinions instead of Dr.

Semino's opinions.[9]   *See Thomas*, 278 F.3d at 957 (The opinions of non-examining physicians may serve as substantial evidence when they are consistent with independent clinical findings or other record evidence); Social Security Ruling (SSR) 96-6p, 1996 SSR LEXIS 3 (findings made by state agency physicians must be treated as expert opinion evidence).

Finally, Plaintiff argues that the ALJ erred in rejecting Dr. Semino's opinions because Dr. Semino's records were part of the reason that Plaintiff was designated "by the State of Arizona DHS as a person who is seriously mentally ill" ("SMI").  (Doc. 18 at 22.)

Disability determinations by other government agencies are not binding on the Commissioner.  20 CFR § 404.1504; Social Security Ruling 06-03p, 2006 SSR LEXIS 5. This rule applies even where the standards for obtaining disability benefits through another agency are more rigorous than the standards applied by the Social Security Administration.  *Wilson v. Heckler*, 761 F.2d 1383, 1386 (9th Cir. 1985). Therefore, while a state finding of disability can be introduced into evidence in a proceeding for Social Security disability benefits, an ALJ may attribute as much or as little weight to the finding as he or she deems appropriate. 20 C.F.R. § 404.1504; *see also Little v. Richardson*, 471 F.2d 715, 716 (9th Cir. 1972) (state determination of disability was not binding in proceedings on application for Social Security disability benefits).

Here, the ALJ explained that although Plaintiff was designated as SMI, "this statement does not indicate any specific limitations on [Plaintiff's] abilities to perform

---

[9] Plaintiff also appears to assert that the ALJ erred in citing to the state agency reports that contain the agency, non-examining physician opinions on which the ALJ relied because the reports also contain inaccurate statements regarding Dr. Steingard's findings. (Doc. 18 at 4.)  Plaintiff further argues that the ALJ's citation to the reports was improper because the reports contain statements by a "Julie Wilson" and Dr. John Prieve, but neither individual has a medical license.  (*Id.*)  First, the statement Plaintiff cites regarding Dr. Steingard's findings is not included in the RFC assessments of any of the state agency, non-examining physicians, and was not specifically relied on by the ALJ. (AR 99.)  Second, the ALJ did not specifically rely on opinions from "Julie Wilson" or Dr. John Prieve in her determination.  Indeed, one of the reports cited to by Plaintiff notes that Dr. Prieve's opinion was from the "prior file" in 2009.  (*Id.* at 108, 116, 141.) Accordingly, Plaintiff's arguments fail.

work-related activity."  (AR 28.)  The ALJ further noted that the determination "was made using criteria determined by the State of Arizona and was made prior to the alleged onset date.  Although it may provide evidence of the severity of [Plaintiff's] mental impairments, the ultimate determination of disability is an issue[] reserved for the Commissioner of Social Security."  (*Id.*)  The ALJ found, and the Court concurs, that the record evidence is consistent with Plaintiff's assessed RFC regardless of Plaintiff's SMI designation.

Based on the above, the Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting Dr. Semino's opinions.

### iv.  The ALJ did not err in giving partial weight to the opinions of examining physician, Dr. Steingard.

Plaintiff also separately argues that the ALJ erred in her treatment of Dr. Steingard's opinions.  (Doc. 18 at 23-35.)  As discussed above, Dr. Steingard conducted a psychological exam of Plaintiff and completed a Psychological/Psychiatrist Medical Source Statement.  (*Id.* at 748-755.)  The ALJ gave "partial weight" to Dr. Steingard's opinions regarding Plaintiff's limitations because she found "the doctor to be vague and imprecise, and lacking specific work-related limitations, but rather suggestive of probable limits."  (*Id.* at 26.)  The ALJ specifically noted that Dr. Steingard "characterized the medical source statement with opinions of 'likely to be a problem' and 'may have a problem.'"  (*Id.*)  However, the ALJ found Dr.'s Steingard's evaluation and findings probative and persuasive of Plaintiff's ability to perform simple work.  (*Id.*)

Plaintiff argues that the ALJ erred in her treatment of Dr. Steingard's opinions because she found "probative and persuasive those of Dr. Steingard's examination findings supporting the ALJ's determination of non-disability while ignoring or minimizing the limitations Dr. Steingard noted."  (Doc. 18 at 24.)  However, the ALJ provided a specific reason for giving Dr. Steingard's *opinions* partial weight:  Dr. Steingard's opinions as to Plaintiff's work limitations were vague.  (AR at 26.)  The ALJ did not err in reaching this conclusion.  Without more, it is not entirely clear how these restrictions should figure into the RFC.

Moreover, the ALJ properly found persuasive Dr. Steingard's objective examination findings, which as detailed above, are supported by the other medical evidence in the record and are consistent with the ALJ's finding that Plaintiff can complete at least simple work.  (*See Id.* at 748-55, 778, 788, 791-92, 798-99, 801-02, 805-06, 815-16, 819, 825, 1439, 1444, 1452, 1456.)  The ALJ specifically cited to Plaintiff's score on the mini mental exam.  (*Id.* at 26.)  The ALJ further found Dr. Steingard's examination findings consistent with medical records that note Plaintiff is stable with medication, and consistent with Plaintiff's activities of daily living.  (*Id.*)  Notably, the ALJ found that Plaintiff had limitations in social interaction based on Dr. Steingard's findings, but chose to further restrict Plaintiff to "moderate limitations with social interaction."  (*Id.* at 26.)  Accordingly, Plaintiff's claim that the ALJ "minimize[ed]" Dr. Steingard's opinions is unsupported.

Plaintiff also argues that the ALJ's treatment of Dr. Steingard's findings and opinions fails to take into account that Plaintiff "has been treated in the ER for panic attacks multiple times and has continued to have symptoms of depression even while medicated," citing to AR 946 and 1002.  (Doc. 18 at 24.)  However, as the ALJ noted, the March 5, 2012 ER treatment note to which Plaintiff cites states that Plaintiff "did not have any abnormalities on EKG and her telemetry did not disclose any dysrhythmias," and "[i]t was felt that [Plaintiff] did not require any further cardiac workup at" that time.  (AR 946.)  Likewise, the January 9, 2012 assessment note to which Plaintiff cites states that Plaintiff is "stable on her medication" and she reported that she "is doing better."  (*Id.* at 1002.)  Further, the ALJ cited to and relied on other medical evidence that supports her finding that Plaintiff is not disabled, including records showing that Plaintiff is stable even off her medications.  (*See, e.g.*, *Id.* at 20, 1377.)

Accordingly, the Court finds that the ALJ did not err in giving Dr. Steingard's opinions partial weight and finding Dr. Steingard's examination findings generally consistent with the RFC assessed by the ALJ.

**b.  Plaintiff's Symptom Testimony**

**i.  Legal Standard**

Plaintiff also argues that the ALJ erred in evaluating Plaintiff's symptom testimony.  (Doc. 18 at 25-30.)   An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison*, 759 F.3d at 1014-15 (citing *Lingenfelter*, 504 F.3d at 1035-36).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom.  *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected to produce his pain."  *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1160-61 (9th Cir. 2008) ("requiring that the medical impairment 'could reasonably be expected to produce' pain or another symptom . . . requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon").

Second, if a claimant shows that she suffers from an underlying medical impairment that could reasonably be expected to produce her pain or other symptoms, the ALJ must "evaluate the intensity and persistence of [the] symptoms" to determine how the symptoms, including pain, limit the claimant's ability to work. *See* 20 C.F.R. § 404.1529(c)(1).  In making this evaluation, the ALJ may consider the objective medical evidence, the claimant's daily activities, the location, duration, frequency, and intensity of the claimant's pain or other symptoms, precipitating and aggravating factors, medication taken, and treatments for relief of pain or other symptoms.  *See* 20 C.F.R. § 404.1529(c); *Bunnell*, 947 F.2d at 346.

At this second step, the ALJ may reject a claimant's testimony regarding the

severity of his or her symptoms only if the ALJ "makes a finding of malingering based on affirmative evidence," *Lingenfelter*, 504 F.3d at 1036 (quoting *Robbins*, 466 F.3d at 883), or if the ALJ offers "clear and convincing reasons" for finding the claimant not credible. *Carmickle*, 533 F.3d at 1160 (quoting *Lingenfelter*, 504 F.3d at 1036). "'The clear and convincing standard is the most demanding required in Social Security Cases.'" *Garrison*, 793 F.3d at 1015 (quoting *Moore v. Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, because there was no affirmative finding of malingering, the ALJ was required to provide clear and convincing reasons for concluding that Plaintiff's subjective complaints were not wholly credible.

### ii.   The ALJ did not err in discounting Plaintiff's testimony.

With regard to Plaintiff's testimony, the ALJ first found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (AR 18.)  The ALJ then found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not entirely credible.  (*Id.*)

At the hearing, Plaintiff testified that she cannot work because she gets sicker, has chest pain, and is tired and worn out all of the time.  (*Id.* at 47.)   Activities such as washing the dishes result in tiredness and require her to sit down.  (*Id.* at 46.)  She also testified that has low energy, a poor memory, and has been overwhelmed by anxiety. (*Id.*)   She further claimed that she has a pacemaker and since the surgery to implant it, she has had difficulty using her left arm, including a lack of strength and an inability to hold things with that arm.  (*Id.* at 47-48.)

Plaintiff claimed that she experiences five panic attacks per week (lasting about 15 minutes at a time).  (*Id.* at 49-50.)  During these attacks, she feels sick to her stomach and retreats to the bathroom.   (*Id.*)   She testified that she experiences chest pains and shortness of breath, but she does not know if it's her heart or anxiety.  (*Id.* at 56-57.)  She claimed that during "low" periods related to her bipolar disorder, she does not shower, answer the phone, leave her house, or talk to anyone.  These "lows" happen about one

1   and a half to two weeks out of the month.  (*Id.* at 51.)   She claimed that she has difficulty

2   grocery shopping because she becomes overwhelmed.  (*Id.* at 52-53.)   She testified that

3   her manic episodes result in sleeplessness, incomplete projects, and high-energy spells of

4   cleaning.  (*Id.* at 52.)

5        She also testified that she suffers from headaches once or twice each month and

6   has to sit quietly with ice on the back of her neck.  (*Id.* at 54-55.) She estimated that she

7   could stand for five minutes at a time, walk the length of a house, and lift five pounds.

8   (*Id.* at 56-57.)   She further claimed that she has trouble concentrating and focusing,

9   which she states is worsening.  (*Id.* at 53-54.)   She claimed that she reads and remembers

10   what she reads "sometimes."  (*Id.* at 54.)

11        The ALJ found Plaintiff's testimony regarding the severity of her symptoms not

12   fully credible because the testimony is inconsistent with: (1) Plaintiff's daily activities;

13   (2) Plaintiff's work history; (3) Plaintiff's treatment history, including "the effectiveness

14   of medications and treatment indicated in the record"; and (4) other medical evidence in

15   the record.  (*Id.* at 18.)   The ALJ further discounted Plaintiff's testimony because her

16   allegations were vague and the ALJ found evidence in the record of possible drug-

17   seeking behavior.  (*Id.* at 19-20.)

18        The Court finds that the ALJ provided several clear and convincing reasons that

19   are supported by substantial evidence for discounting Plaintiff's testimony.  With regard

20   to Plaintiff's daily activities, the ALJ cited to a Functional Report (*Id.* at 259-67, 294-

21   302), in which Plaintiff stated that she prepares her own simple meals, does light

22   cleaning, washes dishes, does laundry, watches television and movies, feeds and cares for

23   her pets, drives, uses public transportation, goes out independently, grocery shops about

24   once a month, visits with her friend, occasionally attends AA meetings, and pays her

25   bills.  (*Id.* at 295-99.)  The ALJ further found that Plaintiff is capable of maintaining her

26   home, citing to notes regarding case manager visits in February 2013 and August 2012,

27   which state that Plaintiff's home was clean and there was plenty of food in the house.

28   (*Id.* at 18.)

Plaintiff argues, citing to *Garrison*, that the ALJ's findings are in err because Plaintiff cannot grocery shop, watch television, or attend AA meetings on a regular and continuing basis, as would be required for full-time work.  (Doc. 18 at 29.)  In *Garrison*, the Ninth Circuit Court "warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."  759 F.3d at 1016.  Further, the Court noted: "[r]ecognizing that 'disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations,' we have held that '[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility."  *Id.* (quoting *Reddick*, 157 F.3d at 722 (citations omitted)).

The Court concludes that the ALJ did not err in finding Plaintiff's symptom testimony not entirely credible based on her daily activities.  As stated above, Plaintiff stated that she can prepare at least simple meals, complete light cleaning, wash dishes, do laundry, care for pets, visit with others, go out independently, drive, use public transportation, and grocery shop.  (AR 18, 260-63, 295-98).  And, although Plaintiff stated that she needed some assistance, the record evidence shows that Plaintiff was able to care for herself and her home.  For example, as the ALJ noted, during one home visit, a care provider not only noted that Plaintiff's home was clean, but observed that Plaintiff "was cleaning out her carport" when the care provider arrived.  (*Id.* at 1214).

Additionally, although Plaintiff claimed to spend her days at home watching television, as the ALJ noted, care providers repeatedly noted that Plaintiff was not home to receive phone calls or home visits.  (*Id.* at 46, 260, 295, 1219, 1221, 1224, 1227, 1229-30, 1236-37, 1239); *see also Molina*, 674 F.3d at 1113 (even where a claimant's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment).  The ALJ further noted that Plaintiff sought out public assistance, reached out to

charitable agencies for assistances, and applied for flex funds for her utilities.  (*Id.* at 18.)  Plaintiff's ability to complete these tasks further supports the ALJ's determination that her symptom testimony is not credible.  Therefore, the ALJ did not err in discounting Plaintiff's testimony based on her daily activities.

The ALJ also properly discounted Plaintiff's symptom testimony because the record reveals sporadic earnings prior to the May 2011 onset date.  (*Id.* at 18.)  The ALJ noted that Plaintiff has not posted any earnings after May 2008, yet Plaintiff did not allege disability until May 2011, suggesting that Plaintiff's thin employment history is not related to her medical impairments.   The ALJ also noted that Plaintiff has maintained sobriety since May 2008, and a mental health intake form indicates that Plaintiff is "unwilling" to work, rather than being unable to work.  (*Id.* at 18-19.)

Plaintiff argues that the ALJ's "attempts to discredit [Plaintiff] by citing her poor work history" is "in sharp contrast to the purpose of the social security act.  [Plaintiff] has not worked in years because she is too impaired to work."  (Doc. 18 at 27.)  However, evidence of Plaintiff's previous work history is a clear and convincing reason to reject Plaintiff's testimony regarding the severity of her symptoms.  *Thomas*, 278 F.3d at 959 (claimant's "extremely poor work history" negatively affected her credibility regarding her inability to work).

Additionally, the ALJ properly discounted Plaintiff's testimony based on her failure to follow-up on recommended treatment.  (AR 19.)  Plaintiff argues that the ALJ cannot rely on Plaintiff's failure to pursue recommended treatment because the ALJ did not comply with SSR 82-59 and "did not cite any evidence to show the conduct to be volitional and avoidable, and did not discuss whether a failure to faithfully attend every single appointment, stop smoking, and follow up on every suggested treatment, it [sic] would have restored her ability to work."  (Doc. 18 at 28.)   However, as the Ninth Circuit Court explained in *Molina*:

> We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Tommasetti*, 533 F.3d at 1039 (quoting

*Smolen*, 80 F.3d at 1284); *Fair*, 885 F.2d at 603. According to agency rules, "the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p, 1996 SSR LEXIS 4.   Moreover, a claimant's failure to assert a good reason for not seeking treatment, "or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." *Fair*, 885 F.2d at 603.

674 F.3d at 1113-14.  The Court in *Molina* further rejected the plaintiff's argument—the same argument Plaintiff asserts here—that the ALJ erred in failing to comply with SSR 82-59 1982 SSR LEXIS 25, "which provides that an ALJ may deny benefits to a claimant who has a disability if the claimant unjustifiably fails to follow prescribed treatment that is 'clearly expected to restore capacity to engage in any [substantial gainful activity],'" finding that the rule was not applicable because plaintiff's failure to seek treatment "was merely a factor in the ALJ's credibility determination." *Id.* at 1113 n.6.  Indeed, "[t]he procedures that SSR 82-59 mandates . . . only apply to claimants who would otherwise be disabled within the meaning of the Act." *Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir. 1995).

Here, the ALJ did not err in finding that Plaintiff's testimony lacked credibility due to her failure to pursue recommended treatment.  As discussed by the ALJ, the record shows that Plaintiff frequently missed appointments and failed to otherwise comply with treatment recommendations.   (AR 1217, 1220, 1222-23, 1231, 1268.)   Plaintiff was discharged from services at Southwest Behavioral Health Services for such conduct.  (*Id.* at 1000-01.)  The ALJ also cited to several examples of records indicating that Plaintiff was doing well and her medications were effective, finding those records inconsistent with Plaintiff's testimony regarding her symptoms.  (*Id.* at 20.)  Accordingly, the ALJ properly considered Plaintiff's failure to pursue recommended treatment in discounting Plaintiff's testimony.

The ALJ also properly discounted Plaintiff's testimony because Plaintiff's allegations were vague.  The ALJ identified specific examples, including Plaintiff's

failure to quantify how often she has episodes of mania or hypomania and her general statement that she was "devastated from surgery" without providing specific examples of how the surgery impacted her.  (AR 19, 750.)   The ALJ therefore did not err in discounting Plaintiff's testimony on this basis.  *Tommasetti*, 533 F.3d at 1040 (claimant was less credible because he was a "vague witness").

The ALJ also properly found that Plaintiff's testimony regarding the severity of her limitations is inconsistent with medical evidence in the record.  (AR 19, 20.)   The ALJ provided examples of such inconsistencies, including a February 17, 2013 note from Plaintiff's treating physician that "true panic attacks apparently do not occur."  (*See, e.g.*, *Id.* at 20, 1437.)   Further, as the ALJ stated, several notes in the record regarding Plaintiff's therapy indicate that she was improving.   (*See, e.g.*, *Id.* at 20, 1018.)   Additionally, as detailed above, the ALJ cited to several notes in the record that support her conclusion that Plaintiff's symptoms were not as severe as she alleged.  (*See, e.g.*, *Id.* at 20, 750, 1268-67.)

Finally, the ALJ discounted Plaintiff's testimony because Plaintiff, on one occasion on August 16, 2011, requested narcotic pain medication for a mouth ulcer, despite being prescribed a topical analgesic, which the ALJ found raised "questions of possible drug-seeking behavior."  (*Id.* at 20, 796.)   Evidence of a plaintiff's drug seeking behavior can be a reason to find the plaintiff not credible.  *See Berger v. Astrue*, 516 F.3d 539, 545-46 (7th Cir. 2008) (affirming an ALJ's determination that the claimant was not credible because of his drug-seeking behavior).   Here, the Court finds that the one example in the record cited by the ALJ is itself an insufficient reason to discredit Plaintiff's testimony.  However, as detailed above, the ALJ provided several clear and convincing reasons supported by substantial evidence for discrediting Plaintiff's testimony.  Therefore, the ALJ's determination is supported by substantial evidence and free of harmful error.  *See Molina*, 674 F.3d 1104 ("several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported

by the record").

### c.   The ALJ did not err in rejecting lay witness statements.

Plaintiff also asserts that the ALJ erred in rejecting statements by Plaintiff's son regarding Plaintiff's limitations.  As stated in 20 C.F.R. §§ 404.1513(d) and 416.913(d), an ALJ may, "[i]n addition to evidence from the acceptable medical sources[,] . . . also use evidence from other sources to show the severity of [Plaintiff's] impairment(s) and how it affects [her] ability to work."  20 C.F.R. §§ 404.1513(d), 416.913(d).  Such other sources include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy.  20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4).  Thus, lay witness testimony by family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider.  *Sprague v. Bowen*, 812 F.2d 1226, 1231-32 (9th Cir. 1987); *see Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) ("[a]n eyewitness can often tell whether someone is suffering or merely malingering . . . . [T]his is particularly true of witnesses who view the claimant on a daily basis . . . .").  To reject lay testimony, an ALJ must give reasons "germane to each witness" for doing so.  *Dodrill*, 12 F.3d at 919.

Here, Plaintiff's son submitted a Functional Report regarding Plaintiff's limitations, making similar statements to those made by Plaintiff.  (AR 251-58.)  The ALJ gave this testimony minimal weight because it is inconsistent with the medical evidence in the record, which the ALJ discussed at length in her decision.  (*Id.* at 28.)  Further, the ALJ noted that Plaintiff's son, like Plaintiff, identified activities Plaintiff can complete, which are inconsistent with a finding that Plaintiff is disabled.  (*Id.*)  The Court finds that the ALJ did not err in giving minimal weight to the statements by Plaintiff's son.  *Bayliss*, 427 F.3d at 1218 (affirming rejection of lay witness testimony that was inconsistent with claimant's daily activities and objective medical evidence); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (where lay witness testimony was similar to the claimant's own complaints, which the ALJ had discredited for clear and convincing reasons, it followed that the ALJ also gave germane reasons for

- 27 -

1    rejecting the lay testimony).

2                    **d.  The ALJ's hypothetical was sufficient.**

3            Finally, Plaintiff argues that the ALJ erred because the hypothetical she posed to

4    the vocational expert was incomplete.  (Doc. 18 at 32.)  If a claimant cannot perform his

5    or her past relevant work, at step five of the disability evaluation process, the ALJ must

6    show there are a significant number of jobs in the national economy the claimant is able

7    to perform.  *See Tackett*, 180 F.3d at 1098-99.   The ALJ can do this through the

8    testimony of a vocational expert or by reference to the Commissioner's Medical-

9    Vocational Guidelines.  *See id.* at 1100-01; *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th

10   Cir. 2000).   An ALJ's findings will be upheld if the weight of the medical evidence

11   supports the hypothetical posed by the ALJ.  *See Martinez v. Heckler*, 807 F.2d 771, 774

12   (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational

13   expert's testimony therefore must be reliable in light of the medical evidence to qualify as

14   substantial evidence.  *See Embrey*, 849 F.2d at 422.  Further, the ALJ's description of the

15   claimant's disability "must be accurate, detailed, and supported by the medical record."

16   *Id.* (citations omitted).  The ALJ, however, may omit from that description those

17   limitations he or she finds do not exist.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th

18   Cir. 2001).

19           Here, Plaintiff argues that the ALJ erred because she "omitted the limitations

20   assessed by Dr. Qasimyar, Dr. Semino, and Dr. Steingard" in her hypothetical questions

21   to the vocational expert.  (Doc. 18 at 32.)  At the hearing, the ALJ posed a hypothetical to

22   the vocational expert of an individual who can do unskilled, light work with the

23   following limitations:  may frequently balance, stoop, crouch, kneel, crawl, and climb

24   ramps and stairs; may never climb ladders, ropes, or scaffolds; must avoid concentrated

25   exposure to non-weather related extreme cold and heat, pulmonary irritants, unprotected

26   heights, and dangerous machinery with moving mechanical parts (except motor vehicles);

27   may perform simple, routine, and repetitive work with occasional simple decision-

28   making and occasional changes in work setting; and may work in the vicinity of others

and have occasional interaction with co-workers, supervisors, and the public.  (AR 64-65.)   These limitations were identified by medical opinions in the record to which the ALJ gave weight.  (*Id.* at 54-65, 136-40.)   The ALJ was not required to include limitations she found do not exist.  Therefore, the ALJ's hypothetical was not deficient.  *See Rollins*, 261 F.3d at 857.

Accordingly,

**IT IS ORDERED** that the Commissioner's decision is affirmed.

**IT IS FURTHER ORDERED** that Clerk of the Court shall enter judgment accordingly and terminate this action.

Dated this 16th day of March, 2015.


Honorable John Z. Boyle
United States Magistrate Judge